518 N.W.2d 656 (1994)
246 Neb. 407
STATE of Nebraska ex rel. NEBRASKA STATE BAR ASSOCIATION, Relator,
v.
Michael D. CARPER, Respondent.
No. S-93-930.
Supreme Court of Nebraska.
July 15, 1994.
HASTINGS, C.J., and BOSLAUGH, CAPORALE, FAHRNBRUCH, LANPHIER and WRIGHT, JJ.
PER CURIAM.
On October 19, 1993, formal disciplinary charges were filed against the respondent, Michael D. Carper. Carper subsequently filed a conditional admission in exchange for a stated form of consent judgment of discipline. See Neb.Ct.R. of Discipline 13 (rev. 1992). We accept Carper's conditional admission and impose discipline.
Carper has conditionally admitted the following:
Carper was admitted to the Nebraska State Bar Association in September 1986. At all relevant times he was engaged in the private practice of law in Kearney, Nebraska.
In January 1991, Carper entered into a contingency employment agreement with his then roommate, Jeffrey S. Grant. Carper was to represent Grant with regard to injuries Grant sustained in a motor vehicle accident. At the time of the accident, Grant was a passenger in a car driven by Shannon Sullivan. The accident was allegedly caused by Allison Markham. This disciplinary action concerns Carper's handling of settlement checks issued by Sullivan's and Markham's insurers.
In June 1991, a settlement check was issued by Sullivan's insurer. The draft was in the amount of $1,000 and was payable to "Jeff Grant." On July 6, Carper endorsed Grant's name on the back of the settlement draft. Carper did not have Grant's written permission to make this endorsement; instead, *657 he relied on the authority of Neb.Rev. Stat. § 7-107 (Reissue 1991). Carper placed the proceeds of the draft into his trust account. On July 25, Carper issued a check from his trust account. The check was in the amount of $666.67 and was payable to Grant.
On August 27, Carper advised Grant that Markham's insurer had made a net settlement offer of $7,000. Grant agreed to accept the offer at that time, believing that $7,000 was the gross settlement, not including the $1,000 previously received. That same day Markham's insurer issued a check in the amount of $11,000, payable to "Jeff Grant an individual and Michael Carper his Attorney."
On August 28, Carper endorsed Grant's name on this second check. Carper did not have Grant's written permission to make this endorsement; he again relied on the authority of § 7-107. Carper placed the proceeds of the check into his trust account. At the time he endorsed the check, Carper also endorsed a form entitled "Final Release of All Claims." Carper signed Grant's name to the release and signed his own name as "witness." Carper had Grant's express permission to sign Grant's name on this form.
On August 29, Carper issued a check to Grant in the amount of $4,470.73. This amount represented $7,000 less $500 in attorney fees to Carper and less $2,029.27 in medical expenses. Carper advised Grant that he would attempt to negotiate a reduction in the payments owing to the medical care providers.
On September 5, at Grant's request, Carper issued Grant a check in the amount of $2,043.96. Carper advised Grant that Grant should proceed to pay all medical expenses with those funds.
On October 1, Grant called Markham's insurer and was told that the gross amount of the settlement was $11,000. Grant then spoke with Carper about this information. Carper issued Grant a check, from his attorney trust account, in the amount of $4,000. There is a genuine disagreement between Grant and Carper as to the reason for this $4,000 payment.
On May 8, 1992, Carper filed a civil lawsuit against Grant for the recovery of his attorney fees in this matter. This lawsuit was settled prior to the hearing before the Committee on Inquiry of the Sixth Disciplinary District.
Carper's actions, as set forth above, establish that he allowed the personal relationship between himself and Grant to negatively affect his professional and business judgment. As a result, Carper's conduct subjected the profession, as well as himself, to undue scrutiny and criticism by the public. Carper's conduct constitutes a violation of his oath of office and a violation of Canon 1, DR 1-102(A)(1), (4), and (6), and Canon 9, DR 9-102(B)(1) and (3), of the Code of Professional Responsibility.
Accepting Carper's conditional admission, we impose the following disciplinary measures:
(1) Carper, having violated a disciplinary rule and having failed to act competently in a matter entrusted to him, is guilty of unprofessional conduct and is hereby publicly reprimanded for conduct violative of the Code of Professional Responsibility and of his oath as a member of the bar of this court.
(2) Carper is hereby placed on probation for 2 years from this date. During this probationary period, he shall be subject to suspension for 6 months upon motion of the Counsel for Discipline if he subsequently violates the conditions of probation or any disciplinary rule. Any such suspension shall be in addition to any further discipline under the Nebraska Supreme Court Rules of Discipline for any such subsequent violation.
(3) The conditions of probation are that, during the probationary period, Carper shall:
(a) Within the first 60 days of the probationary period, establish an office system that encompasses complete records of all funds and properties of a client coming into the possession of Carper;
(b) Within the first 60 days of the probationary period, establish an office system such that within 3 days of receipt of client funds, Carper will advise the client in writing of the receipt of the funds and, thereafter, within the first 10 days of each following month, render complete records of appropriate *658 accounts to each of his clients regarding those accounts;
(c) Allow another attorney, chosen by Carper with the consent of the Counsel for Discipline, to examine Carper's trust account records and the contents of any contingency fee agreement with any client and to observe Carper when he places his signature on any such agreement, and Carper shall maintain a copy of such agreement and the related file for a period ending 2 years after the expiration of the probationary period or the expiration of any additional period of suspension imposed by this court pursuant to paragraph (2) above;
(d) Not make any oral or written amendment to a contingency fee agreement with any client without first receiving written approval from the attorney identified pursuant to paragraph (3)(c) above;
(e) Successfully complete a course in legal ethics at an accredited law school within the first 365 days of probation;
(f) Complete an accredited continuing legal education course in law office management during the probationary period;
(g) Pay all costs of the prosecution of this action and all costs and professional fees of the attorney identified to carry out the requirements of paragraphs (3)(c) and (d) above; and
(h) File a report with the Counsel for Discipline every 3 months advising the Counsel for Discipline as to Carper's fulfillment of the conditions of probation.
JUDGMENT OF DISCIPLINARY SANCTIONS.
WHITE, J., not participating.